IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF KANSAS

DEANNA SIMS, )
)
              Plaintiff, )
)
v. ) Case No. 09-1048-WEB
)
MICHAEL J. ASTRUE, )
Commissioner of Social Security, )
)
              Defendant. )

MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security denying disability insurance benefits and supplemental security income. Plaintiff claims to have been disabled since October 29, 2005 as a result of degenerative disc disease status, obesity, diabetes, and depression. The Administrative Law Judge determined Plaintiff was unable to perform past relevant work, but was able to perform other jobs that exist in the national economy.

I. General Legal Standards

The standard of review is set forth in 42 U.S.C. § 405(g), "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court reviews the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion. Zoltanski v. F.A.A., 372 F.3d 1195, 1200 (10th Cir. 2004). To determine if the Commissioner's decision is supported by substantial

evidence, the court does not reweigh the evidence. Cowan v. Astrue, 552 F.3d 1182, 1185 (10th Cir. 2008). However, the court must scrutinize the entire record to determine if the Commissioner's conclusions are rational. Graham v. Sullivan, 794 F.Supp. 1045, 1047 (D.Kan. 1992).

An individual is under a disability if the individual can establish that she has a physical or mental impairment which prevents her from engaging in substantial gainful activity and is expected to result in death or last for a continuous period of at least twelve months. 42 U.S.C. § 423(d). The impairment must be to the extent that she is not only unable to perform her past relevant work, but cannot, considering her age, education, and work experience, engage in any other substantial gainful work existing in the national economy. Id..

The Commissioner employs a five-step sequential process to evaluate whether a claimant is disabled. 20 C.F.R. § 404.1520, 416.920, Allen v. Barnhart, 357 F.3d 1140, 1142 (10th Cir. 2004). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988). In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment, and whether the severity of her impairment meets or equals the severity of any impairment in the Listing of Impairments. 20 C.F.R. part 404, subpart P, appendix 1; Id. at 750-51. If the claimant does not meet or equal a listed impairment, then the Commissioner assesses her RFC to be used in both step four and step five. 20 C.F.R. § § 404.1520(e), 416.920(e).

At step four and step five, the Commissioner evaluates whether claimant can perform past relevant work, and whether she is able to perform other work in the economy. Williams,

844 F.2d at 751. The burden is on the claimant to prove a disability that prevents performance of past relevant work in step one through step four. Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001). At step five, the burden shifts to the Commissioner to show jobs in the national economy within the claimant's capacity. Id..

II. Discussion

Plaintiff argues the Commissioner improperly denied benefits. Plaintiff argues that the ALJ improperly substituted his own opinion for the opinion of a medical doctor in disregarding Dr. Shoffner's postural limitations. Plaintiff also argues that the ALJ committed error in ignoring the GAF (Global Assessment Functioning) score when he found that the Plaintiff's depression was not a severe impairment. The Commissioner argues that there is substantial evidence in the record to support the findings of the ALJ, and that the ALJ did not err when he did not mention the GAF score, as long as the findings were supported by other evidence.

a. Medical Evidence

1. Standard

The opinions of physicians who have seen a claimant over a period of time for purposes of treatment are given more weight over the views of consulting physicians or those who only review medical records. Reid v. Chater, 71 F.3d 372, 374 (10th Cir. 1995). Controlling weight should be given to a treating physician's opinion, if it is not inconsistent with other substantial evidence in the record. Drapeau v. Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001). The ALJ may not second-guess or discount a treating physician's opinion based on his own judgment or lay opinion. McGoffin v. Barnhart, 288 F.3d 1248, 1252 (10th Cir. 2002). If a treating source is not given controlling weight, then the ALJ must specify what lesser weight he assigned the

treating physician opinion. Robinson v. Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004). A treating source opinion not entitled to controlling weight is still entitled to deference and must be weighed using the following factors: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and the extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Watkins v. Barnhart, 350 F.3d 1297, 1300-1301 (10th Cir. 2003).

    2. The ALJ's Decision

The ALJ determined the Plaintiff had the following severe impairments: degenerative disc disease, obesity, diabetes with possible neuropathy, and depression. The ALJ found the impairments "constitute more than slight abnormalities and have had more than a minimal effect on the claimant's ability to perform basic work activities for a continuous period of 12 months." (Doc. 10, p. 3). The ALJ found that the impairment of degenerative disc disease did not meet Listing 1.04 because Plaintiff did not have one of the listed disorders in conjunction with evidence of nerve root compression. (Doc. 10, p. 4). The ALJ found the Plaintiff did not demonstrate that her impairment of diabetes met the listing to be found disabled. (Doc. 10, p. 4). The ALJ noted there was "some evidence of neuropathy, it was generally mild, and there was no objective evidence of retinopathy or significant and persistent disorganization of motor functioning, resulting in gross and dexterous movements, or gait and station. Furthermore, the record did not document acidosis occurring as often as required of this medical listing." (Doc.

10, p. 5). The ALJ considered the Plaintiff's obesity in terms of the effects on Plaintiff's ability to work and ability to perform activities of daily living. (Doc. 10, p. 5). The ALJ found the Plaintiff's obesity did not prevent ambulation, reaching, orthopaedic and postural maneuvers, and did not prevent her from completing a broad range of daily activities. (Doc. 10, p. 5). However, the ALJ found the Plaintiff's obesity, "in combination with the claimant's degenerative disc disease and diabetes, reduce her ability to stand and walk, and to lift and carry." (Doc. 10, p. 5).

The ALJ found "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment." (Doc. 10, p. 6). The ALJ considered the Plaintiff's medical history, noting that in August of 2005 x-rays showed a grade 1-2 anterior listhesis of L5 on S1, but otherwise only mild degenerative changes. (Doc. 10, p. 6). At the time, Plaintiff was 5 feet, 3 inches tall, weighed 230 pounds, and the Plaintiff smoked two packs of cigarettes a day.[1] (Doc. 10, p. 6). The ALJ also noted an MRI showed the anterolisthesis resulted in an exposed disc encroaching upon the ventral aspect of the thecal sac, and caused bilateral foraminal narrowing. (Doc. 10, p. 6). The Plaintiff had surgery in late 2005, a posterior decompression and fusion with placement of interbody cages at the L5 - S1 level. (Doc. 10, p. 6-7). The ALJ noted the Plaintiff was able to ambulate after surgery, and that her pain was well controlled. After the surgery, x-rays did not detect any new pathology. (Doc. 10, p. 7). An MRI found only moderate spinal stenosis. (Doc. 10, p. 7). In April, 2006, Plaintiff had a

---

[1] It should be noted that a review of the medical records shows the Plaintiff lost over 30 pounds before this case was submitted to the ALJ.

5

physical examination with Dr. Oommen. (Doc. 10, p. 7). Dr. Oommen found that although Plaintiff had a limited range of motion in her lumbar spine, her gait and station were stable. (Doc. 10, p. 7). Plaintiff was diagnosed with diabetes in February of 2007. (Doc. 10, p. 7). Plaintiff's blood sugar level and blood pressure were controlled with medication. (Doc. 10, p. 7). Plaintiff complained of some numbness in her feet. (Doc. 10, p. 7). Plaintiff did not report any visual changes, polydipsia, or any more numbness, tingling, or burning in her feet. (Doc. 10, p. 7).

The treating physician opined that the Plaintiff was limited to sedentary exertional level, but also identified a number of non-exertional limitations which would preclude the Plaintiff from working. (Doc. 10, p. 7). The treating physician prohibited all "postural maneuvers" due to back pain. (Doc. 10, p. 7). The ALJ found that the record did not support the limits the treating physician proscribed. (Doc. 10, p. 7). The ALJ based this conclusion on the x-ray that showed only moderate stenosis, not a severe injury or malformation, and the Plaintiff's statement that she was not experiencing the neuropathic symptoms. (Doc. 10, p. 7). The ALJ gave partial weight to the opinion of the treating physician, finding that exertional limitation to sedentary work was supported, but there was no support for the other limitations. (Doc. 10, p. 7).

The ALJ gave little weight to the State agency medical advisers, based on the opinion of the treating physician. (Doc. 10, p. 7). The ALJ also considered the Plaintiff's own Function Report, in which she describes no limitations in completing items of personal care, preparation of meals, the ability to perform some household chores, the ability to walk in her yard, and the ability to drive and grocery shop. (Doc. 10, p. 7-8). Plaintiff reported in the Function Report that she is able to pay bills, participate in hobbies, and that she has no social limitations. (Doc.

10, p. 8). The ALJ found the Plaintiff could not perform past relevant work, but in determining Plaintiff's RFC, found Plaintiff was able to perform work at the light exertional level. (Doc. 10, p. 8).

   3. Analysis

Plaintiff argues that the ALJ failed to properly consider the opinion of the treating physician, and instead substituted his own medical lay opinion. Plaintiff specifically argues that the ALJ relied on his own opinion of the x-rays, the ALJ did not cite to substantial evidence in finding that the lack of neuropathic symptoms invalidated the Plaintiff's postural limitations, and the ALJ employed a "pick and choose" method of evaluating the treating source statement.

The ALJ stated that the x-rays were unable to detect any new pathology. (Doc. 10, p. 6-7). A review of the administrative record shows the ALJ's statement was an accurate recitation of the physicians' opinions. Dr. Pence stated that a review of the x-rays showed no new abnormalities, and the radiology report dated 1/10/06 stated that "no unusual reaction is seen about the fusion sites. Compared with the previous study of 12/08/05, no new pathology is seen." (Doc. 10-1, p. 21). The radiology report from December 8, 2005 states, "There is some mild degenerative spurring present in lumbar spine. Sacroillac joints are unremarkable on AP projection. No additional abnormality is noted." The ALJ stated that "The claimant does have reports of back pain in the record, but x-rays since her surgery show only some moderate stenosis, not any severe injury or malformation." Clearly, the ALJ did not rely on his own opinions, but the records of the Plaintiff's doctors.

Plaintiff argues there was not substantial evidence to show a lack of neuropathic symptoms that did not support Plaintiffs postural limitations. Plaintiff's treating physician

7

included a number of postural limitations in the Plaintiff's functionality. Dr. Shoffner opined that due to Plaintiff's chronic sciatica and low back pain and recent lumbar fusion, she was extremely limited in her postural limitations. (Doc. 10-1, p. 118).

In contrast to Dr. Shoffer's recommendations, Dr. Underwood completed a residual function capacity form, in which he opined that due to low back pain and a recent lumbar fusion, Plaintiff was restricted to occasional postural limitations. (Doc. 10-1, p. 46). Dr. Underwood concluded that Plaintiff was capable of sedentary work activity. (Doc. 10-1, p. 51). Similarly, Doctor Oommen concluded on April 28, 2006 that the Plaintiff reported back pain, there was limited range of motion of the bilateral knees and lumbar spine, and paraspinous muscle spasm. Dr. Oommen found Plaintiff's gait and station were stable, Plaintiff had moderate difficulty with orthopedic maneuvers, and Plaintiff displayed no sensory or motor deficit. (Doc. 10-1, p. 40-43).

An x-ray performed on July 16, 2008 found "The L5-S1 vertebrac are fused in position of spondylolithesis which is stable. No breakage or change in position of hardware is noted. A bone graft is visible. Osseous fusion is not confirmed on this plain x-rays. There is mild disc space narrowing at L3-4 with mild hyperophic spurring of the lumbar vertebrae." (Doc. 10-2, p. 4).

Reviewing the above evidence the ALJ opined,

> "The claimant's treating physician provided an opinion of the claimant's functionality in a residual function capacity format at Exhibit 9F. Therein he opines that the claimant is limited to work at the sedentary exertional level, but he also includes a number of non-exertional limitations which would, essentially, preclude work on the part of the claimant. His opinion prohibits the performance of almost all postural maneuvers because, he notes, the claimant has back pain. (Exhibit 9F/123). The claimant does have reports of back pain in the record, but x-rays since her surgery show only some moderate stenosis (Exhibit 2F/14), not

8

any severe injury or malformation. And the claimant recently reported to him that she was not experiencing the neuropathic symptoms that she had earlier (Exhibit 8F/110). It would appear, then, that the record does not contain support for the non-exertional limitations. For these reasons, the opinion of the claimant's physician is given partial weight. The undersigned credits the exertional limitation to sedentary work, but finds no support for the other limitations."

An ALJ may reject a treating physician's opinion only when there is contradictory medical evidence. McGoffin, 288 F.3d at 1252. Controlling weight is given to the treating source opinion that is supported by clinical and laboratory diagnostic techniques, if it is not inconsistent with other substantial evidence in the record. Castellano v. Sec. of Health and Human Services, 26 F.3d 1027, 1029 (10th Cir. 1994); 20 CFR § 404.1527(d)(2). The ALJ must disregard the opinion of a treating physician if it is conclusory and unsupported by medical evidence, and must articulate specific, legitimate reasons for doing so. Id. The ALJ cited to x-rays to show that the medical evidence did not support the treating physician's claims of postural limitations. The medical records submitted by treating sources and the medical opinions of the treating sources did not support the treating physician's postural limitations. The ALJ limited the weight given to the treating physician because the limitations were based on the Plaintiff's reports of pain, which were not supported by medical tests and medical records from other physicians. The ALJ did not completely discount the treating physician's opinion, in fact, the ALJ gave little weight to the State agency medical advisers because the treating physician's opinion was more credible.

Plaintiff's argument that the ALJ did not set forth substantial evidence to show a lack of symptoms to support Plaintiff's postural limitations is not supported by the record. The ALJ set out the Plaintiffs's history, the medical records, including x-rays and MRIs, and the opinions of other treating sources in finding that the treating physician's recommendation on the Plaintiff's

9

limitations was not supported. The ALJ did not rely solely on the Plaintiff's subjective complaints. The ALJ considered the Plaintiff's report of pain and symptoms, and the x-rays since surgery. The ALJ did accept the treating physician's range of sedentary work, which represents a significant limitation on Plaintiff's work capacity, which shows the ALJ did give credit to the treating physicians medical opinions. Ellis v. Barnhart, 392 F.3d 988, 994 (8th Cir. 2005).

Plaintiff argues the ALJ employed a "pick and choose" method of evaluating the treating source statement. In support of this argument, Plaintiff argues that the ALJ did not cite to evidence directly contradicting Dr. Shoffner's opinion. Plaintiff also argues that the limitations recommended by Dr. Shoffner are consistent with the opinion of the state agency consultant.

The ALJ is not entitled to pick and choose from the medical opinions or from parts of a medical opinion to support only his finding of nondisability. Robinson, 366 F.3d at 1083. The record must show that the ALJ considered all the evidence, but the ALJ is not required to discuss every piece of evidence. Clifton v. Chater, 79 F.3d 1007, 1009-10 (10th Cir. 1996). The ALJ must discuss the evidence that supports his conclusions, as well as the evidence that contradicts his conclusion. Id. The ALJ is entitled to resolve any conflicts in the record. Richardson v. Perales, 402 U.S. 389, 399, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971).

Plaintiff points out that Dr. Shoffner's opinion is consistent with the state agency opinion, and relies on this fact to argue that there is no evidence contradicting Dr. Shoffner's opinion. However, a review of the ALJ's decision shows the ALJ gave little weight to the state agency opinion because it found that Plaintiff could do light work, which was different than Dr. Shoffner's opinion. The ALJ found Dr. Shoffner's opinion more credible than that of the state

agency. Plaintiff's argument that the state agency opinion and the treating physician's opinion is consistent is not supported by the evidence. The ALJ explained in the opinion the weight he placed on the treating physician's opinion, and also explained why he did not give full weight to the opinion. The ALJ did cite to evidence that was contradictory to Dr. Shoffner's testimony. As stated above, the ALJ reviewed the treating source opinions, the x-rays, and the MRI evidence, finding that Dr. Shoffner's limitations were not supported by the evidence.

b. Depression

    1. Standard

Plaintiff argues that the ALJ erred in finding her depression was not severe. Plaintiff argues the ALJ failed to acknowledge her GAF score, and employed a "pick and choose" method of evaluating the evidence.

A low GAF score is not conclusive on the issue of whether a Plaintiff is unable to perform the necessary functions of employment. A GAF score is a subjective determination which represents the "clinician's judgment of the individual's overall level of functioning." Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders, Text Revision (DSM-IV-TR) 32 (4th ed., text revision 2000). The GAF score ranges from 100, which represents superior functioning, to 1, which represents persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death. Id. at 34. GAF is a classification system providing objective evidence of a degree of mental impairment. Birnell v. Apfel, 45 F.Supp.2d 826, 835-26 (D.Kan. 1999).

Failure to discuss a GAF score alone is insufficient to reverse an ALJ's determination of non-disability. Lee v. Barnhart, 117 Fed.Appx. 674, 678 (10th Cir. 2004). The ALJ is not

11

required to discuss every piece of evidence in the record. Clifton v. Chater, 79 F.3d 1007, 1009-10 (10th Cir. 1996). A GAF score may be useful to the ALJ in formulating the RFC, but it is not essential. Petree v. Astrue, 260 Fed.Appx. 33, 42 (10th Cir. 2007) (citing Howard v. Comm'r of Soc. Sec., 276 F.3d 235, 241 (6th Cir. 2002)). "A low GAF score does not alone determine disability, but it is instead a piece of evidence to be considered with the rest of the record." Petree v. Astrue, 260 Fed.Appx. At 42.

2. The ALJ's Decision

The ALJ found the Plaintiff's depression a non-severe impairment. The ALJ noted the Plaintiff began mental health services in February of 2008. (Doc. 10, p. 3).

> "The claimant described typical symptoms of depression (Exhibit 7F/59), and was, in fact, diagnosed with that condition, though only of mild severity. This appeared to be situational, as the claimant's husband had just been sentenced to prison. No doctor or treating source has prescribed any limitations related to the claimant's condition. The claimant's depressive disorder impairment thus constitutes at most only a slight abnormality that cannot reasonably be expected to produce more than minimal, if any, work related limitations. Therefore, this impairment is considered to be non-severe (20 C.F.R. 404.1521, 416.921).
> The claimant's medically determinable mental impairment of depression does not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and is therefore nonsevere. In making this finding, the undersigned has considered the four broad functional areas set out in the disability regulations for evaluating mental disorders and in section 12.00C of the Listing of Impairments (20 CFR, Part 404, Subpart P, Appendix 1). These four broad functional areas are known as the "paragraph B" criteria.
> The first functional area is activities of daily living. In this area, the claimant has no limitation. The claimant's psychological state is not alleged to prevent her from carrying out daily activities. The next functional area is social functioning. In this area, the claimant has not limitation. The claimant states that she has no difficulties getting along with family, friends, neighbors or others (Exhibit 5E). The third function area is concentration, persistence or pace. In this area, the claimant has mild limitation. The claimant notes that her ability to pay attention is 'no usually a problem' (Exhibit 5E/21). The fourth functional area is episodes of decompensation. In this area, the claimant has experienced no episodes of extended duration."

3. Analysis

A GAF score is one piece of evidence which may or may not be important in a case. In Lee v. Barnhart, 117 Fed.Appx. at 678, the court found that a GAF score below 50 indicates "serious symptoms or any serious impairment in social, occupational, or school functioning" and suggests "an inability to keep a job." Id. at 678; also DSM-IV-TR at 34. Lee found that at step two, a GAF score below 50 should not be ignored. However, Muntzert v. Astrue, 2010 WL 3724858 (D.Kan. Sept. 17, 2010), differentiated Lee, finding that when a when the case is decided at step five, not at step two, the failure to mention the GAF score is not necessarily error. Id. at 4.

Although the ALJ did not mention the Plaintiff's GAF score, it is clear the ALJ considered the Plaintiff's function. The ALJ reviewed the medical records and the Plaintiff's own statements and found that "no doctor or treating source has prescribed any limitations related to the claimant's condition." The ALJ found only minimal limitations after considering the four functional areas. There is no evidence in the record suggesting that the Plaintiff's GAF score was related to occupational factors. There is no binding precedent to indicate an ALJ must consider a GAF score in his written decision. The Tenth Circuit noted in an unpublished opinion that "a low GAF score does not alone determine disability, but is instead a piece of evidence to be considered with the rest of the record." Petree v. Astrue, 260 F.Appx 33, 42 (10th Cir. 2007). Given the findings of the ALJ on the Plaintiff's functioning and the residual function capacity determination, and due to the inherent subjectivity of the GAF assessment, the ALJ's failure to discuss the GAF was not error.

III. Conclusion

IT IS THEREFORE ORDERED the Commissioner's decision is AFFIRMED.

IT IS SO ORDERED this 21st day of December, 2010.

    s/ Wesley E. Brown
Wesley E. Brown
United States Senior District Court Judge